**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**

**SARAH TEAGUE**                                                                        **PLAINTIFF**

**v.**                                                       **CIVIL ACTION NO. 4:13CV-16-R**

**KENTUCKY STATE POLICE** *et al.*                                    **DEFENDANTS**

**MEMORANDUM OPINION**

Plaintiff, Sarah Teague, filed a *pro se*, *in forma pauperis* complaint (DN 1) and amended complaint (DNs 5 and 8) under 42 U.S.C. § 1983 (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed.

**I. SUMMARY OF CLAIMS**

Plaintiff sues a number of people involved with the investigation of her daughter's disappearance in Henderson County, Kentucky, nearly 18 years ago. The complaint names as Defendants the Kentucky State Police (KSP); the Henderson Police Department; Clay Hutchinson; Mike Cline; Jon Fritz; Pat Isbill; Robie Atherton; Jeff Eastham; David Osborne; Susan DeWitt; Brian Babbs; Samantha Deegan; James Hendricks; Tim Walthall; Jerry Garner; Robin Lewis; Marc Carter; Robert Shoultz; Greg Beard; Tim Rascoe; Dr. Mark LeVaughn; Scott Thomas; and Larry Owens. She states that she has proof that the story she was told on August 26, 1995, concerning her daughter Heather's abduction is not true. Her narrative is as follows:

> On August 26, 1995, I received a phone call from KSP (Kentucky State Police) asking me if I knew where Heather was, that her car was being towed. According to this officer, Heather had left her car parked illegally on farm property on Newburgh Beach in Henderson County, Spottsville, KY.
> He arrived on the beach to find Heather's car on a tow truck, her empty blue lounge chair at the water's edge.
> We met Lt. David Osborne. He pulled out Heather's bathing suit top and asked if it belonged to Heather. He then told us that

Heather had been dragged into the woods by her hair at gunpoint as an eyewitness watched through a telescope from across the river in Indiana. The "suspect" was 6'0", 210-230 lbs., with dark bushy hair and a bushy beard. He had worn no shirt, cut-off jeans and black tennis shoes.

Bootprints were found beside Heather's chair and KSP did a mold. FBI processed the Bronco. Evidence was given to KSP where it set for ten years. (Remember, according to eyewitness, suspect wore black tennis shoes.) Who wore the boots?

KSP did their own independent testing 8 months after Heather was taken. Results were "inconclusive." (Remember FBI process vehicle.) FBI did not find the two spots of blood on passenger window of Bronco. Bronco given back to family (Dill), where the door was removed. . . .

After 10 yrs., the detective, Tim Rasco, asked Marty's mom what size shoes he had worn.

There is something wrong with this investigation into Heather's "alleged" abduction. I say "alleged" because the first Lt., Sgt., the eyewitness have created stories. After Dill's death, I was encouraged to stop looking for Heather. At two months, Lt. Osborne took away (or tried to) all hope. If, since, to this day, "they" blame Marty Dill for this, why won't they search his property?

I have searched in places a mother shouldn't have to search for her child while the officials change their stories.

These are the questionable acts that need to be given attention to:
- 911 call
- sketch
- 2 DNA reports
- investigative report
- autopsy report
- FOIA/DEA (FBI's files)
- Suicide note

The information in this FOIA states
- Heather was last seen alive on Hayes Boat Ramp, Henderson, KY on Aug. 26, 1995 at 3:00 p.m.
- Also states that Heather's disappearance can be linked to drugs, prostitution, public corruption/ (strip clubs)
  Where does this leave Heather? I had to declare Heather legally deceased in 2007 to get FBI's files (didn't get them until 2011)
    Heather literally disappeared before their eyes.
  Almost eighteen years later, this investigation has been spent covering up the happenings on Newburg Beach on August 26, 1995.

2

>When Captain Robert Shoultz still (as of two months ago) is trying to prove Dill had hair – something is wrong.
>
>The KSP, Henderson Police Dept., James Hendricks, FBI, have answers. It is time for justice and for truth. It is time for Heather to come home.
>
>The documents, pictures, taped conversations I have will shock the court. Please allow me to question these people. Please let Heather Dannyelle Teague be as important as your child.

Plaintiff's complaint and amended complaint contain the following descriptions of each Defendant.

- **Clay Hutchinson:** was the artist who did the police sketch.

- **Mike Cline:** a KSP trooper, who was on the beach investigating a truck stuck in the mud when Heather was abducted.

- **Jon Fritz:** came to Plaintiff's home on June 30, 2009, to tell her that Heather had been sold and was alive.

- **Pat Isbill:** worked in the Owensboro Police Department's evidence department and worked with Osborne at the time of the abduction. "There was an instance where Osborne made up a story about a hog farm having been analyzed. I have letters and proof of a total 'story' having been told. Isbill knows about the 911 call made by the witness and other wrongdoings he was involved in while at KSP."

- **Robie Atherton:** "was in charge of signing the search warrant for the Dill property the night of Dill's death, the independent testing of DNA by KSP, and other wrongdoings in the investigation . . . ."

- **Jeff Eastham:** was with the KSP at the time of the abduction and signed an untrue document to corroborate Osborne's statement. Plaintiff states, "I will present this document with proof when the court permits."

- **David Osborne:** was the first lieutenant in charge of the abduction investigation. Plaintiff states he was responsible for the sketch of the suspect, the 911 call, DNA investigative report, and search warrant, all of which have questionable credibility.

- **Susan DeWitt:** of the Daviess County Commonwealth's Attorney's Office signed the investigative report the night of Dill's death. Plaintiff states that even though Dill's uncle, Ernie Green was with him for hours, "no GPR test was done on Dill or Green. DeWitt and I talked in 1999

        and she told me that Tim Watthall, the eyewitness, was at the Dill property the morning Dill died. Years later, 2002 or 2003, I called Ms. DeWitt and she first said I had the wrong number. I located her at the Commonwealth Attorney's office and she hung up on me. She has information about Dill's death and other wrongdoings in this investigation (her suspicious behavior)."

- Brian Babbs: a former KSP trooper who has information about what happened at the Dill residence the night of Dill's death.

- Samantha Deegan: was Plaintiff's victim's advocate from 2005-2008. Plaintiff states, "She and Jerry Garner, FBI, Owensboro, Ky. came to my home July 22, 2005 to take my DNA because evidence that FBI had taken from Bronco Sept. 2, 1995 had been found still at Post 16 Henderson. They advised me to get an attorney and that there would be two lawsuits. A month ago, Sam and I spoke. She told me that 'Heather had been hired by the Democratic Party.' (Naming Paul Herron) Sam also asked that include her boss, James Hendricks in this lawsuit."

- James Hendricks: "met Heather Teague on August 25, 1995 on Hayes Boat Ramp in the wee hours of the morning, according to his boss, John Newels. Hendricks asked Heather to leave the area. On February 2008, Jerry Garner, FBI, and Hendricks came to my home to 'clear up a rumor.' Hendricks said he saw Heather 3 wks prior. John Newls told me two times that the meeting took place the night before Heather was abducted. (More info on FBI in my complaint) Why tell a lie about this? (Conversation taped)."

- Tim Walthall: was the eyewitness watching from across the river in Indiana. "He waited before he called for help, didn't tell the truth about the call, and he described the man taking Heather as having a big bushy beard and bushy hair. He states he went to the morgue to positively ID Dill and that the back of his head was blown away. Autopsy report states: no exit wound. When I learned Dill had been clean shaven and bald, he said that Dill had worn a wig and mosquito netting. He and the Lt. (David Osborne) found Heather's bathing suit bottoms in the woods. He also states he 'radioed' Trooper Cline, KSP who was already on the beach back to the abduction site. Eddie Jones was this attorney at a meeting he called to persuade me before the 1 yr anniversary to file a civil suit against Tracy Dill."

- Jerry Garner: "can verify Hendricks statement, which in itself needs answers as to why Hendricks made up a story and felt it was important enough to come to my home to 'clear up a rumor.'"

4

- Robin Lewis: was Heather's boyfriend in August 1995. "He was supposed to have met her at noon August 26, 1995. The red Chevette Heather was seen in 8-26-95 2:30-3:00p.m. belonged to Robin's friend, John Mooney. Robin made the statement: 'I told her to not undo her bathing suit (top).' A witness came to me a few years ago saying he heard an argument between Heather and a man with straggly hair. He heard this, 'I told you to not undo your bathing suit (top).' A boot print was found near Heather's chair. It is in KSP Post #16 Henderson Ky evidence room."

- Marc Carter: of the KSP took over Heather's case after Rascoe retired. "Rascoe's last concerns were the eyewitness, Tim Walthall's credibility and the shoe size of Dill. There is a boot print that is still in the evidence room." Plaintiff states that Carter was on duty when KSP received secret information about Heather's murder from FedEx, and she wants to know what this information is.

- Robert Shoultz: "Jon Fritz came to my home June 30, 09 telling me Heather was alive and that she had been sold. I waited before I told KSP because I had no trust. Over a year passed that I told Shoultz. (He denied in email I ever told him at all.) Robin Lewis: Boot print still not checked. Statement from Jonathan Hollowell (bathing suit and an argument). Told Shoultz I had interview with Hallowell on it – still hasn't asked for information. Robin wore boots."

- Greg Beard: of the KSP, "I was asking for the KSP to please drag/drain the pond on the Dill property and to search the property for my Heather (since they were/are adamant Dill killed Heather). Beard came to sit beside me, drew a picture of a pond, lifted his pencil into the air telling me that if Heather was in the pond she would've had to been dropped from the sky (as he dropped his pencil for special effects). What does that mean?"

- Tim Rascoe: "Det. Tim Rascoe's last concern before he retired in 2005 was Tim Walthall's (the eyewitness) credibility. Rascoe went to Marty Dill's mother to ask what size shoe Marty had worn (after 10 yrs.) (Boot print mold taken by KSP Aug. 95) near Heather's chair. (Still not been compared to anyone.)"

- Dr. Mark LeVaughn: "signed the autopsy report/other reports concerning Marvin Marty Dill's death. He agreed to meet me to explain it, changed phone numbers, stopped taking my calls."

- Scott Thomas: "as a witness only to evidence found July '05 after FBI gave it to

5

KSP Post #16 Henderson, Ky on Sept. 2, 1995."

- Larry Owens: "has information/pictures of red Chevette. He can verify how KSP were not interested in this vehicle or any evidence of my daughter."

As relief, Plaintiff asks for justice, truth, and for KSP to be held responsible for making up stories. She also states that she wants "my Heather home" and she wants the Dill property searched.

## II. ANALYSIS

This Court must review the instant action. *See* 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d at 604-05. Upon review, this Court must dismiss a case at any time if the Court determines that the action is "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts

to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**A.     § 1983 Claims**

  *1.     Statute of limitations*

In the portion of the complaint which asks Plaintiff to identify the grounds for filing this case in federal court, Plaintiff cites to § 1983 and "malfeasance." As set forth below, Plaintiff's § 1983 claims are barred by the statute of limitations.

Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275-280 (1985). Thus, in Kentucky, § 1983 actions are limited by the one-year statute of limitations found in KY. REV. STAT. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 183. Though the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint. *Fields v. Campbell*, 39 F. App'x 221, 223 (6th Cir. 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)).

Plaintiff filed this action on February 26, 2013. The abduction of her daughter occurred on August 26, 1995. The most recent date Plaintiff points to in her complaint is June 30, 2009, when she alleges Defendant Fritz came to her home. It appears from her complaint that she told Shoultz about that visit a year later, presumably June 2010. However, June 2010 is still more than one year before the date of filing her complaint. Thus, any § 1983 claim, even one related to the most recent occurrence in her complaint, is time-barred.

To the extent that the disappearance of Heather is still unsolved and the investigation is therefore, presumably, still ongoing, and the Court understanding that Plaintiff's loss is certainly ongoing, the Court will also consider Plaintiff's § 1983 claims on the merits.

### *2.   Merits*

In order to state a claim under § 1983, a plaintiff must allege both a violation of a right or rights secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42 (1988). With regard to the Defendants who are federal agents, a similar claim is available under *Bivens v. Six Unknown Fed'l Narcotics Agents*, 403 U.S. 388 (1971). *Bivens* cases use the same analysis as in § 1983 cases. *See Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001). In either case, without a violation of a provision of the Constitution or federal laws, no cause of action lies.

Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff does not identify which constitutional right(s) were allegedly violated. Reading the complaint liberally as this Court must, the Court considers whether the allegations support a claim of a constitutional wrong.

To the extent Plaintiff's allegations can be considered to be that Defendants have violated the Due Process Clause because they have not properly investigated this case, such an allegation does not state a claim. *Parker v. Napoleon*, 46 F. App'x 298, 299 (6th Cir. 2002). "[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest

in the prosecution or nonprosecution of another."); *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."). This is because the Due Process Clause of the United States Constitution "confers protection to the general public against unwarranted governmental interference, but it does not confer an entitlement to *governmental aid* as may be necessary to realize the advantages of liberty guaranteed by the Clause." *Walton v. Alexander*, 44 F.3d 1297, 1302 (5th Cir. 1995) (emphasis in original). "The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order." *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

Nor is there a constitutional duty for state actors to protect an individual from harm by a private actor. *DeShaney v. Winnebago Cnty. Dep't of Social Serv.*, 489 U.S. 189, 195-97 (1989). There are two exceptions to this rule: (1) where there is a special relationship between the State and the individual; and (2) where there is a state-created danger. Neither of these exceptions apply to Heather's disappearance as alleged in Plaintiff's complaint.

If the State restrains "the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty" – an affirmative duty to protect arises. *DeShaney*, 489 U.S. at 200. There are no allegations that Heather was in custody or otherwise restrained by a state actor when her disappearance occurred. Thus, this exception does not apply.

Under the state-created danger exception, "state officials may be found to have violated the substantive due process rights of people not within their custody when their affirmative actions directly increase the vulnerability of citizens to danger or otherwise place citizens in harm's way."

9

*Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (internal quotation marks and citation omitted). A claim of state-created danger has three elements: (1) an affirmative act by the state creating or increasing the risk that the victim would be exposed to a third-party's act of violence; (2) the state's actions placed the victim specifically at risk to a special danger, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the victim. *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 763 (6th Cir. 2010). The Court looks to whether the state actor did anything "affirmative" to "embolden" the person causing harm to another. *Jones v. Reynolds*, 438 F.3d 685, 703 (6th Cir. 2006) ("[W]here officers enable or embolden a private actor to drive dangerously, they commit an affirmative act for state-created-danger purposes."). Importantly, "[f]ailure to act, as opposed to affirmative conduct, does not cause a 'state-created danger' to arise." *Brooks v. Knapp*, 221 F. App'x 402, 407 (6th Cir. 2007).

None of the allegations made in Plaintiff's complaint or amended complaint would support the application of this exception. Plaintiff does not allege that any of the state-actor Defendants had any knowledge of the danger to Heather that day or that any state action enabled or emboldened the person or persons responsible for Heather's disappearance. By separate Order, the Court will dismiss Plaintiff's § 1983 claims for failure to state a claim.

**B.     Malfeasance**

Plaintiff's complaint also refers to malfeasance. "The general term 'malfeasance' means the wrongful or unjust doing of some act which the doer has no right to perform." *Bailey v. Commonwealth*, 790 S.W.2d 233, 235 (Ky. 1990). "However, the more specific term 'malfeasance in office' means the wrongful or unjust doing of some official act, which the doer, a public official, has no right to perform and has done so with gross negligence or evil intent." *Id.*

10

In Kentucky, malfeasance in office is a crime. *See* Ky. Rev. St. § 61.170. However, Plaintiff, a private citizen, cannot bring a criminal action. "It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965). The Court does not have the power to direct that criminal charges be filed against Defendants. *Peek v. Mitchell*, 419 F.2d 575, 577-78 (6th Cir. 1970); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972). Thus, to the extent that Plaintiff seeks criminal charges be brought against Defendants, her claim must be dismissed.

If Plaintiff is referring to malfeasance in its generic form, meaning a wrongdoing, "[m]alfeasance, absent more, does not rise to the level of a constitutional violation." *Overturf v. Brewer*, No. CV 11-1856-PHX-GMS, 2013 WL 996652, at *1 n.2 (D. Ariz. Mar. 13, 2013). Nor would negligent behavior on the part of Defendant, even gross negligence, rise to the level of a constitutional violation. Such claims may be enough for a state law claim but "do not give rise to a constitutional tort under Section 1983." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1067 (6th Cir. 1994).

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss Plaintiff's complaint.

Date:


cc: Plaintiff, *pro se*
　　　Defendants
4413.009

11